[934 NYS2d 141]

In the Matter of ELLIOTT DEAR, an Attorney, Respondent. DE-
PARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDI-
CIAL DEPARTMENT, Petitioner.

First Department, December 8, 2011

### APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Scott D. Smith* of counsel), for petitioner.

*Elana L. Yeger,* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Elliott Dear was admitted to the practice of law in the State of New York by the Third Judicial Department on June 28, 2005. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department. He currently maintains a law office in Queens.

The Departmental Disciplinary Committee now seeks an order pursuant to 22 NYCRR 605.15 (e), confirming findings of misconduct by the Hearing Panel, and imposing a sanction of no less than six months.

This disciplinary proceeding arises out of a traffic stop which occurred in New Jersey on July 5, 2007. Respondent, who is an Orthodox Jew, was stopped for speeding by a New Jersey State Trooper and given a summons for going 84 mph in a 55 mph zone. Unbeknownst to respondent and his wife, who was in the passenger seat, the stop was videotaped from a camera in the trooper's car. Further, a microphone on the trooper's uniform recorded everything that the trooper said, although it did not capture respondent's statements.

Six days after receiving the speeding ticket, respondent wrote the following letter to the traffic court on the letterhead of the law firm where he worked as an associate:

> "Ladies and Gentlemen:
>
> "This ticket shall be dismissed immediately since -
>
> "a. there was no speeding and the officer refused to show me evidence that there was: (i.e. - 'not guilty')
>
> "b. even if there was speeding (which there wasn't) - I was in a 65-mph zone NOT a 55 mph zone; and
>
> "c. The officer called me a 'jew kike' - and this prejudice obviously was the cause for the ticket.
>
> "I am a licensed attorney in NY State and will be representing myself in this matter (contact details enclosed).

"Elliott Dear

"[signed] Elliott Dear Esq.

"[business card attached]"

The traffic court set the matter down for a hearing and the letter was forwarded to the New Jersey State Police, which in turn referred it to Sgt. Alexander Koopalethes of the Internal Affairs Investigation Bureau for an investigation. Sergeant Koopalethes attempted to reach respondent by telephone for two months and, only after a partner at respondent's law firm directed respondent to return his call, did Koopalethes hear from him, and have an opportunity to conduct a telephone interview. In the meantime, in August 2007, respondent defaulted on his traffic court hearing date and a contempt of court warrant was issued against him with "bail" set at $265 (the fine for the violation).

During his telephone interview with Sgt. Koopalethes, which was recorded, respondent at first equivocated about whether the trooper directed an ethnic slur at him, but after he was pressed to remember if a slur was used, he explained that since he wrote the letter contemporaneously to the incident, it was likely that the trooper said it. The interview continued and respondent added that the trooper dismissed respondent's proffered explanation for speeding, namely, that his pregnant wife needed a bathroom, as more baloney from "you guys," which respondent stated referred to Orthodox Jews. Respondent further recounted that the trooper displayed a demeaning attitude toward respondent and his wife. However, none of this information was supported by the video or audio recordings made during the traffic stop.

In April 2008, 10 months after the traffic stop, the internal investigation was completed and the trooper was exonerated of all charges. In July 2008, the New Jersey State Police filed a complaint against respondent with the Disciplinary Committee wherein it was revealed that the traffic stop had been recorded. In August 2008, respondent was advised of the complaint and in September 2008, more than one year later, he paid the $265 fine for the speeding violation.

In a letter-answer to the complaint dated January 29, 2009, prepared by respondent's then attorney, and also signed by respondent, respondent admitted that the trooper did not use any ethnic slurs and that he "exacerbated his mistake by not fully refuting [this] allegation . . . during his telephonic interview"

with Sgt. Koopalethes. However, respondent continued to criticize the trooper's "demeanor" during the traffic stop and the trooper's apparent insensitivity to his wife's "bathroom demands." The letter concluded with respondent accepting responsibility for making the false statement against the trooper and acknowledging his wrongdoing.

During his subsequent June 2009 deposition, respondent no longer attributed a demeaning attitude to the trooper. He explained that he wasn't trying to get back at the trooper, but that he just wanted the ticket dismissed. Respondent further stated that since he never filled out a formal complaint or form against the trooper, he never thought his writing that the trooper had used an ethnic slur would go anywhere except on a ticket processing pile, and that he had no logical reason for his decision to write the letter, just that it was "impulsive and emotional." Regarding the telephone interview with Sgt. Koopalethes, respondent testified that he knew he had lied and was in trouble, and he repeated the lie because he was concerned about possibly being charged with perjury.

The Departmental Disciplinary Committee served respondent with a notice and statement of five charges, and respondent admitted to all of them. Accordingly, the Referee found that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) by falsely alleging in a letter to New Jersey authorities that the trooper referred to him with an ethnic slur (charge one), and by falsely alleging during the telephonic interview with Sgt. Koopalethes that during the traffic stop, the trooper referred to him and his wife as "you guys," which was meant to be indicative of the trooper's prejudice against Jewish people (charge two). Respondent engaged in conduct that was prejudicial to the administration of justice in violation of DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) by consciously avoiding the initial phone calls and letters from Sgt. Koopalethes for approximately two months (charge three), and by failing to appear in court regarding the summons resulting in a contempt of court warrant being issued against him on August 16, 2007 (charge four). Lastly, by engaging in the above-described misconduct, including not retracting false statements when questioned by the New Jersey Internal Affairs investigator, respondent engaged in conduct that adversely reflects on his fitness as a lawyer in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (charge five).

In support of mitigation, respondent presented testimony from his treating psychiatrist, who diagnosed respondent as suffering from "borderline personality disorder, generalized anxiety disorder, attention deficit disorder, major depression, and narcissistic personality." He stated that at the time of the incident, respondent was experiencing a great amount of stress due to his working long hours at a job he did not like, marital tension, and substantial difficulties with respect to the oldest of his three children who, like respondent, suffered from ADHD. In the psychiatrist's opinion, the disorders that he diagnosed respondent having, combined with the aforementioned stress, "were the primary factors in making [respondent] vulnerable to impulsive acts." The psychiatrist changed respondent's medication and he, along with a psychologist specializing in dialectical behavior therapy (DBT), recommended respondent undertake an intensive three-day-a-week outpatient DBT therapy regimen at the Columbia Day Program. Respondent completed a two-month program at Columbia while also seeing his psychiatrist twice a week.

The psychiatrist explained that respondent's disorders do not cause a person to lie but they make such individuals "more vulnerable to making bad decisions," such as lying, even though they realize what they are doing is wrong. He stated that people like respondent would know the potential implications of actions if they stopped to think about them, but "the problem is that they often don't stop to think and just do." Respondent also called three character witnesses, all of whom testified favorably about respondent's character, honesty and integrity.

The Referee found that while writing the letter was a single aberrational act, it was exacerbated by respondent's statements, required to be truthful, in his telephonic interview with Sgt. Koopalethes and by his perpetration of the theme of anti-Semitic behavior in his answer to the complaint. He further stated that he believed that respondent lacked the intent to harm the trooper, and credited respondent's psychiatrist's testimony that his accusation was an "impulsive" action even though six days had elapsed since he had received the ticket.

The Referee further stated that he believed that respondent was sincerely remorseful for the incident and that his apology to the trooper was genuine. The Referee accepted respondent's psychiatrist's opinion that respondent's personality disorders were legion and strong, and was persuaded that respondent's writing the charge that the trooper used an ethnic slur was

impulsive. The Referee further asserted that, while perhaps not technically the "cause" of respondent's misconduct, his many personality disorders, exacerbated by the stress of his job, his marital problems and especially the problems of his oldest child, had a severe impact on his behavior. The Referee credited respondent for his devotion to therapy and continued attendance at therapy sessions, which appeared to be having a positive impact. The Referee observed that the trooper was not directly harmed by respondent's behavior, insofar as he was not disciplined, suspended, docked pay or benefits or even forced to hire a lawyer. On the other hand, he noted that the officer had nine months of emotional stress while the Internal Affairs investigation was ongoing and, though the disparate treatment claim against him was determined to be unfounded, the incident would be documented in his personnel file forever, which could affect or at least delay future consideration of a request for transfer or a promotion. Recognizing the financial hardship which a suspension would cause respondent, the Referee nevertheless recommended a six-month suspension.

In unanimously recommending confirmation of the Referee's findings of fact, conclusions of law and recommended sanction of a six-month suspension, the Hearing Panel found—

> "the Respondent's conduct to be nothing short of outrageous. To have made entirely fictitious charges of religious bias against a state police officer simply to get out of a speeding ticket, and to maintain the truth of those charges in a follow-up official investigation without regard to the potentially negative impact on the career, livelihood, and emotional state of the police officer, demonstrated Respondent's complete lack of a moral compass and sound judgment.

> "In mitigation are the facts that Respondent has a short but unblemished record, was 29 years old at the time of the incident with severe financial and family stresses, is undergoing psychiatric treatment for his disorders with considerable success, cooperated with the Committee and appears genuinely remorseful for his conduct."

Although the Committee had initially sought a two-year suspension before the Referee, it now seeks an order pursuant to 22 NYCRR 603.4 (d) confirming the findings of fact and conclusions of law of the Hearing Panel and suspending respon-

dent for no less than six months. Respondent asks this Court to disaffirm the determination of the Hearing Panel and issue a private reprimand or, at most a censure.

We confirm the Hearing Panel's sanction. Respondent made false accusations, "which accusations were prejudicial to the administration of justice, engaged in conduct that adversely reflects on his fitness as an attorney, [and] asserted positions which served to harass and maliciously injure" (*Matter of Aretakis*, 57 AD3d 1160, 1161 [2008], *appeal dismissed* 11 NY3d 919 [2009] [one-year suspension where respondent, inter alia, falsely accused judge of criminal activity in making a recusal motion]). Indeed, even without the personal impugnation of a person's character as in this matter, this Court has suspended an attorney for resorting to falsehoods in an attempt to achieve a favorable outcome in an administrative proceeding (*see Matter of Donofrio*, 231 AD2d 365 [1997] [one-year suspension where the respondent falsely informed the manager of the Parking Violations Bureau and an administrative law judge (ALJ) that his hearing needed to be expedited because his wife was in the hospital about to give birth and forged the ALJ's signature on a document stating that the respondent's summonses had been dismissed]).

Here, respondent cavalierly attributed anti-Semitic slurs to an innocent person in a manner which could have had devastating consequences to that person's career. This act alone warrants a harsh sanction, not to mention that it was done to gain an advantage in an administrative proceeding. Notwithstanding the mitigating evidence and respondent's apparently sincere remorse, his behavior was reckless and reflects poorly on the bar. Under the circumstances, censure or admonition is simply too lenient a penalty.

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel's determination as confirmed the Referee's findings of fact and conclusions of law, and, effective 30 days from the date hereof, respondent is suspended from the practice of law for a period of six months, and until further order of this Court.

GONZALEZ, P.J., MAZZARELLI, ANDRIAS, RICHTER and ABDUS-SALAAM, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, effective January 7, 2012 and until further order of this Court.